# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

KHADIJA BEZZAZ,

        Plaintiff,

v.                                    Case No. 6:21-cv-528-JA-DAB

CHRISTOPHER MOORE and
MICHAEL FULLER,

        Defendants.

_____

## ORDER

Khadija Bezzaz's face, neck, arms, and back were cut and scarred by flying shards of glass when a deputy sheriff shattered her car window by striking it with a baton during a traffic stop. Pursuant to 42 U.S.C. § 1983, Bezzaz filed this action against Orange County Deputy Sheriffs Christopher Moore and Michael Fuller, alleging that they violated her rights under the Fourth Amendment to the U.S. Constitution. Bezzaz also asserts claims under Florida law.

Moore and Fuller now move for summary judgment, relying in part on the defense of qualified immunity. (Mots., Docs. 30 & 31).[1] Viewing the record evidence in Bezzaz's favor—as required when assessing Defendants' summary

---

[1] In addition to the summary judgment motions themselves, the relevant filings are Bezzaz's Responses (Docs. 32 & 33) and Defendants' Replies (Docs. 34 & 35).

judgment motions—both motions must be granted in part and denied in part.

## I.  Factual and Procedural Background

This case arises from a very brief but eventful traffic stop that was largely captured by Moore's and Fuller's body cameras.[2]  On June 3, 2020, just over a week after George Floyd was killed by a Minneapolis police officer, a group of people gathered in eastern Orlando, Florida, to protest Floyd's death.  The Orange County Sheriff's Office monitored the group throughout the day.  At around 7 p.m., a sergeant observed a car stopped on Curry Ford Road next to protesters gathered on the sidewalk.  The sergeant radioed for officers in his unit to get the car to move along.  (See, e.g., Strickland Dep., Doc. 30-10, at 13).

Moore responded to the call and pulled his marked sheriff's office vehicle behind the stopped car; Fuller came up behind Moore's vehicle in his own marked vehicle.  The video shows the car—driven by Bezzaz, a five-foot-five-inch-tall female who was the only occupant of the car—stopped in the roadway with its hazard lights flashing and several of the protesters standing in the road beside the driver's window talking to Bezzaz.  Moore Body Cam Video at 00:01–00:05.  Moore activated the lights on his vehicle and called over the speaker on his vehicle for Bezzaz to move along.  Id. at 00:05–00:10.

After about ten seconds, Bezzaz drove to a nearby Walgreens parking lot

---

[2] Both sides filed flash drives containing the body camera footage.

and pulled in, turned back toward the road, and stopped. Id. at 00:15–00:55. Moore and Fuller pulled in behind her. As a third sheriff's office vehicle pulled in and blocked Bezzaz's access to the road, Moore exited his car and immediately began yelling for Bezzaz to "get out of the car" as he approached the driver's door. Id. at 00:56–1:07. At that point, Bezzaz was seated in the driver's seat with the window about 1/4 of the way down. Id. at 01:07. Moore repeated his command to "get out of the car" and Bezzaz responded, "Why?" Id. at 01:07. Moore immediately asked, "Do you want to go to jail? Seriously? Either get out of the car or you're going to jail." Id. at 01:08. Bezzaz asked, "Why am I getting out of the car?" while beginning to film the encounter with her cell phone. Id. at 01:14.

By this time, Fuller had approached the driver's door as well. Moore told Bezzaz that she had been stopped in the middle of the road, and Fuller told her that they had "a lawful reason" for asking her to get out of the car. Id. at 01:16–01:20. Moore repeated that Bezzaz had been stopped in the roadway, "violating a traffic violation," and said, "At this point you are being detained, do you understand?" Id. at 01:20–01:25. Bezzaz stated, "Um, I wasn't doing anything besides . . ." before Moore interjected, "I'm not going to sit here and argue with you, I'm going to ask you to step out of the car or we're going to remove you out of the car, your choice, I'm trying to be nice, I have not been disrespectful, have I?" Id. at 01:26–01:38. Bezzaz responds, "No, but I don't think I have done

anything to be detained for." Id. at 1:40–1:42.

At that point, the encounter suddenly and rapidly escalates. Moore can be seen reaching into Bezzaz's car through the open window while Bezzaz yells, "Do not reach into my car. Do not reach into my car. Stop! Stop!" Id. at 01:43–01:46. Moore grabs the top of the open window with both hands, as if to try to break it, but then removes his hands. Id. at 01:43–1:47. Moore then suddenly hits the window with his baton while Bezzaz repeatedly yells "stop" and screams. Id. at 01:48. At almost exactly the same moment, Fuller begins hitting the passenger side window with his own baton. Id. at 01:48.

Moore shattered the driver's window with the second strike of his baton just as Bezzaz started to open the driver's door—approximately 42 seconds after Moore approached the door. Id. at 01:48–01:50. Shards of glass flew into Bezzaz's car and onto her face and body. Id. at 01:51. Bezzaz began screaming "Oh my God" as Moore and Fuller pulled her out of the car, ordered her to put her hands behind her back, propelled her up against the driver's door of Fuller's car, and handcuffed her. Id. at 01:51–2:08. They then placed Bezzaz in the back of Moore's car. Id. at 2:08–2:22. By that time, there were at least eight law enforcement officers on the scene, and some of the protesters had made their way along the sidewalk to the Walgreens.

While seated alone in Moore's car, Bezzaz realized that her face was bleeding and shouted to Moore, "I need help. I am bleeding, I need an

ambulance." Id. at 03:22–03:28.  Moore called for an ambulance, but because he did not tell Bezzaz that he had done so, Bezzaz continued to tell him, "I am bleeding, I need an ambulance," id. at 03:32–03:34; 03:42–:03:44, and screamed, "I am bleeding!" as Moore left her in the car alone again, id. at 03:48–03:51. When Moore opened the back door where Bezzaz was seated, Bezzaz—visibly bleeding from her face—again screamed, "I am bleeding, I need an ambulance." Id. at 03:55–04:00.  Moore then told her that an ambulance was on the way.  Id. at 04:00.

An ambulance ultimately arrived and took Bezzaz to the hospital, where she was briefly treated for cuts from the glass and released.  Moore submitted charges against Bezzaz of battery on a law enforcement officer[3] and resisting an officer without violence to the state attorney's office, but that office declined to prosecute.  (See Arrest Aff., Doc. 30-4; see also State Attorney Documentation, Doc. 30-11, at 1–2).

Bezzaz filed this suit against Moore and Fuller in March 2021.  (Compl., Doc. 1).  In the Complaint, Bezzaz asserts four federal claims pursuant to 42 U.S.C. § 1983 for alleged violations of the Fourth Amendment:  against Moore (Count I) and Fuller (Count II) for false arrest; against Moore for excessive force (Count III); and against Fuller for failure to intervene (Count IV).  She also

---

[3] The basis for the battery charge was Moore's assertion that Bezzaz rolled the car window up on his arm.  Bezzaz disputes this, and the videos do not resolve it.

asserts three claims under Florida law against Moore: false imprisonment (Count V), battery (Count VI), and intentional infliction of emotional distress (Count VII). Defendants seek summary judgment on all of Bezzaz's claims.

## II.   Summary Judgment Standards

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, the Court construes the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party and "may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.'" Sawyer v. Southwest Airlines Co., 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (quoting Anderson, 477 U.S. at 251–52).

## III.   Discussion

### A.   Federal Claims

In Counts I through IV, Bezzaz claims that Moore and Fuller falsely arrested her, that Moore used excessive force, and that Fuller failed to intervene to stop Moore's use of excessive force—all in violation of the Fourth Amendment's proscription against unreasonable seizures.[4]  Both Moore and Fuller contend that they are entitled to summary judgment on these claims based on the defense of qualified immunity.  As set forth below, both Defendants enjoy qualified immunity on the false arrest claims.  However, the summary judgment record does not support qualified immunity for Moore on the excessive

---

[4] The Fourth Amendment's "ban on 'unreasonable searches and seizures'" is "made applicable to the States by the Due Process Clause of the Fourteenth Amendment." City of Ontario v. Quon, 560 U.S. 746, 750 (2010); accord Bailey v. United States, 568 U.S. 186, 192 (2013).  Thus, in the Complaint, Bezzaz properly alleges deprivation "of her constitutional rights guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution." (Doc. 1 at 1).

In their summary judgment motions, Defendants seem to find fault with Bezzaz's reference to the Fourteenth Amendment as part of the basis of her claims. (See, e.g., Doc. 30 at 11 ("Plaintiff's assertion that the Fourteenth Amendment applies in the instant case is misguided."); Doc. 31 at 11 (same)).  Defendants apparently construe Bezzaz's reference to the Fourteenth Amendment as an indication that she is pursuing her claims as a pretrial detainee rather than as an arrestee. See, e.g., Piazza v. Jefferson Cnty., 923 F.3d 947, 952 (11th Cir. 2019) (explaining that "the Fourth Amendment prevents the use of excessive force during arrests, and the Eighth Amendment serves as the primary source of protection against excessive force after conviction, [while] it is the Fourteenth Amendment that protects those who exist in the in-between—pretrial detainees" (citations omitted)); (see Doc. 30 at 12; Doc. 31 at 12).  But it is clear to the Court that Bezzaz is pursuing her claims as an arrestee under the Fourth Amendment standard, and her reference to the Fourteenth Amendment reflects that that amendment makes the Fourth Amendment applicable to the states and their subdivisions.

force claim or for Fuller on the failure-to-intervene claim.

### 1.   *Qualified Immunity Principles*

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "To receive qualified immunity, the officer must first show that he acted within his discretionary authority." Lewis v. City of W. Palm Beach, 561 F.3d 1288, 1291 (11th Cir. 2009).  If the officer does so, "the burden then shifts to the plaintiff to show that qualified immunity should not apply." Id.

If Defendants were acting within their discretionary authority, determination of whether Defendants enjoy the benefit of qualified immunity on any of Bezzaz's claims at the summary judgment stage requires assessment of (1) whether the facts, viewed in the light most favorable to Bezzaz, show a violation of a constitutional right and (2) whether that right was clearly established at the time of the events at issue. See Pearson, 555 U.S. at 232; see also Tolan v. Cotton, 572 U.S. 650, 655–56 (2014); Stryker v. City of Homewood, 978 F.3d 769, 773 (11th Cir. 2020) ("If, at the summary judgment stage, the evidence construed in the light most favorable to the plaintiff shows that there are facts inconsistent with granting qualified immunity, then the case and the

qualified immunity defense proceed to trial."). This two-part analysis need not be undertaken in any particular order. <u>Pearson</u>, 555 U.S. at 236. All of Bezzaz's § 1983 claims arise under the Fourth Amendment's protection against unreasonable seizures.

     *2. Application*

     **a. Discretionary Function**

Bezzaz argues—with surprising vigor—that Defendants were not performing a "discretionary function" during the events at issue. (<u>See, e.g.</u>, Doc. 32 at 9–11; Doc. 33 at 9–11). But Bezzaz is incorrect on this point. She essentially argues that law enforcement officers do not have discretion to violate citizens' constitutional rights, but this is not the correct focus of the "discretionary function" inquiry.

Under well-established precedent, the salient question in analyzing whether an officer was performing a "discretionary function" is "whether the [officer] was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize." <u>Holloman ex rel. Holloman v. Harland</u>, 370 F.3d 1252, 1265 (11th Cir. 2004). As the Eleventh Circuit explained in <u>Holloman</u>, "to pass the first step of the discretionary function test for qualified immunity, the defendant must have been performing a function that, *but for* the alleged constitutional infirmity, would have fallen with[in] his legitimate job description." <u>Id.</u> at 1266 (emphasis

in original). Thus, the <u>Holloman</u> court explained, "[i]n considering whether an act of allegedly excessive force fell within a police officer's duties, for example, we do not ask whether police have the right to use *excessive* force." <u>Id.</u> (emphasis in original); <u>see also</u> <u>Crosby v. Monroe Cnty.</u>, 394 F.3d 1328, 1332 (11th Cir. 2004) ("Because making an arrest is within the official responsibilities of a sheriff's deputy, [the defendant] was performing a discretionary function when he arrested [the plaintiff].").  In sum, Defendants unquestionably were performing discretionary functions when they pulled Bezzaz over for a traffic violation and ultimately arrested her; whether they violated her rights in doing so is assessed during a later part of the analysis.  Thus, "the burden . . . shifts to [Bezzaz] to show that qualified immunity should not apply." <u>Lewis</u>, 561 F.3d at 1291.

> ### b.  False Arrest (Counts I (Moore) and II (Fuller))

Bezzaz alleges false arrest in Counts I and II, asserting that Moore and Fuller "had no legal right to detain, handcuff (seize) or arrest" her.  (Compl. ¶¶ 44 & 54).  But because—even viewing the facts in the light most favorable to Bezzaz—Defendants had at least arguable probable cause to believe that Bezzaz had committed both a traffic violation and the offense of resisting without violence during the traffic stop, Defendants are entitled to qualified immunity on the false arrest claims.

i.     **The Traffic Stop**

Bezzaz asserts that Moore and Fuller had no right to "detain" her. But she is mistaken. To the extent Bezzaz bases Counts I and II on an assertion that the initial traffic stop itself was an unreasonable seizure, Moore and Fuller enjoy qualified immunity.

"Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of" the Fourth Amendment. Whren v. United States, 517 U.S. 806, 809–10 (1996). "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." Id. at 810. "To receive qualified immunity, an officer need not have actual probable cause, but only 'arguable' probable cause." Brown v. City of Huntsville, 608 F.3d 724, 734 (11th Cir. 2010).

"Arguable probable cause exists where 'reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to" detain the plaintiff for having committed a traffic violation. Id. (quoting Kingsland v. City of Miami, 382 F.3d 1220, 1232 (11th Cir. 2004)). Here, Defendants had arguable probable cause to believe that Bezzaz committed a traffic offense when she stopped in the roadway and impeded traffic. See, e.g., § 316.183(5), Fla. Stat. (providing that "[n]o

11

person shall drive a motor vehicle at such a slow speed as to impede or block the normal and reasonable movement of traffic").

Thus, Defendants enjoy qualified immunity on Bezzaz's false arrest claims to the extent these claims are based on the initial traffic stop.

## ii.     The Arrest

Bezzaz also asserts in Counts I and II that her arrest was an unreasonable seizure in violation of the Fourth Amendment. But just as with the initial traffic stop, Bezzaz cannot overcome qualified immunity because Defendants had arguable probable cause to arrest her.

"[W]hen an officer has probable cause to believe a person committed even a minor crime in his presence, . . . [t]he arrest is constitutionally reasonable." Virginia v. Moore, 553 U.S. 164, 171 (2008). And as just discussed, an officer enjoys qualified immunity if he had "only 'arguable' probable cause." Brown, 608 F.3d at 734.

Here, Defendants had at least arguable probable cause to arrest Bezzaz for committing a traffic violation and for resisting an officer without violence.[5] Under Florida law, "[a] law enforcement officer may arrest a person without a warrant when," among other things, "[t]he person has committed a felony or

---

[5] In his Reply, Moore asserts that he also had probable cause to arrest Bezzaz for battery on a law enforcement officer. (See Doc. 34 at 6). But the facts are in dispute regarding that offense.

misdemeanor . . . in the presence of the officer" or "[a] violation of chapter 316 has been committed in the presence of the officer." § 901.15(1), (5), Fla. Stat. Chapter 316, Florida Statutes, contains the state's traffic laws.

It was reasonable for Defendants to believe that Bezzaz committed a traffic violation in their presence, and Defendants therefore had arguable probable cause to arrest her. See, e.g., § 316.183(5), Fla. Stat. Additionally, Defendants had arguable probable cause to arrest Bezzaz for the offense of resisting an officer without violence in violation of section 843.02, Florida Statutes. It has long been established that it is permissible for law enforcement officers to require a driver to exit the car during a traffic stop. See Pennsylvania v. Mimms, 434 U.S. 106 (1977). By failing to comply with Moore's commands to exit the car, Bezzaz at least arguably "resist[ed], obstruct[ed], or oppose[d]" him within the meaning of § 843.02.

Because Defendants had at least arguable probable cause to arrest Bezzaz, they enjoy qualified immunity on her false arrest claims.[6] Thus, their summary judgment motions must be granted as to Counts I and II of the Complaint.

---

[6] The existence of arguable probable cause is sufficient to dispose of Bezzaz's federal false arrest claims. As discussed later in this Order with regard to Bezzaz's state law false imprisonment claim, Defendants also had actual probable cause to arrest Bezzaz, and the federal claims in Counts I and II would fail on the merits even in the absence of the defense of qualified immunity.

### c.   Excessive Force (Count III—Moore)

Bezzaz asserts in Count III that Moore used excessive force in arresting her. Moore is not entitled to summary judgment on this claim.

"It is clearly established that the use of excessive force in carrying out an arrest constitutes a violation of the Fourth Amendment." Thornton v. City of Macon, 132 F.3d 1395, 1400 (11th Cir. 1988) (citing Graham v. Connor, 490 U.S. 386, 394 (1989)). While some degree of force is expected and sometimes necessary in order to carry out a lawful arrest, excessive use of force renders a seizure unreasonable. See, e.g., Lee v. Ferraro, 284 F.3d 1188, 1197–98 (11th Cir. 2002). Assessing the reasonableness of the force used "requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." Graham, 490 U.S. at 396 (further internal quotations marks omitted) (quoting Tennessee v. Garner, 471 U.S. 1, 8 (1985)); see also Stephens v. DeGiovanni, 852 F.3d 1298, 1317 (11th Cir. 2017) ("In considering an excessive-force case, a court should determine whether an officer's conduct in making an arrest is objectively reasonable or if it is an over-reactive, disproportionate action for the situation relative to the response of the apprehended person."); id. at 1318 ("Courts must examine 'the fact pattern from the perspective of a reasonable officer on the scene with knowledge of the attendant circumstances and facts, and balance the risk of bodily [or psychological] harm to the suspect

14

against the gravity of the threat the officer sought to eliminate.'" (alteration in original) (quoting McCullough v. Antolini, 559 F.3d 1201, 1206 (11th Cir. 2009))).

As the Supreme Court explained in Graham, evaluation of the reasonableness of force under the Fourth Amendment "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396. In addition to these Graham factors, a court "also consider[s] as relevant the nature and extent of the arrestee's injuries." Glasscox v. City of Argo, 903 F.3d 1207, 1214 (11th Cir. 2018); accord Stephens, 852 F.3d at 1325 ("The nature and extent of physical injuries sustained by a plaintiff are relevant in determining whether the amount and type of force used by the arresting officer were excessive." (emphasis omitted)). Under the circumstances of this case, the Court cannot conclude that the amount of force used by Moore was reasonable.

First, looking to the non-exclusive factors listed by the Supreme Court in Graham, the "crime" at issue here was not severe but was instead, at worst, either a minor traffic infraction or failure to instantaneously comply with commands to get out of a car during a traffic stop. Further, the video does not suggest that Bezzaz posed any threat—immediate or otherwise—to the safety

15

of the officers or others.  See, e.g., Stephens, 852 F.3d at 1322 ("[I]t . . . is clear Stephens posed no threat to the safety of Deputy DeGiovanni or the other two deputies . . . . The only threatening language and forceful, physical conduct, which injured Stephens, came from Deputy DeGiovanni.").  And although Bezzaz may have *passively* resisted by questioning why she was being detained instead of immediately exiting the car, she was not "actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396; see also Hanks v. Rogers, 853 F.3d 738, 748 (5th Cir. 2017) ("Where, as here, an individual stopped for a minor traffic offense offers, at most, passive resistance and presents no threat or flight risk, abrupt application of physical force rather than continued verbal negotiating (which may include threats of force) is clearly unreasonable and excessive." (footnote omitted)).  Indeed, Bezzaz was surrounded by law enforcement officers and their vehicles.  In sum, then, Bezzaz was not "suspected of having committed a serious crime," did not "pose[] an immediate threat to anyone, and [did not] actively resist[] arrest." Thornton, 132 F.3d at 1400.  And, looking to Bezzaz's injuries, she suffered cuts and scars from the broken glass, and she also claims emotional harm from the incident.

Nowhere in his motion does Moore note the factors identified by the Supreme Court in Graham.  Instead, he asserts that "[c]ourts in this Circuit have previously held that breaking a window to remove a driver is not excessive force," (Doc. 31 at 16 (citing Adams v. Basile, No. CV 108-038, 2009 U.S. Dist.

LEXIS 113554, at *23 (S.D. Ga. Oct. 29, 2009) (magistrate judge report and recommendation)), and argues that the force he applied here was de minimis, (Doc. 31 at 17–18). Moore also asserts that Bezzaz's "injury was minor" because "[s]he required no stiches [sic], and all cuts and scratches healed without infection," (id. at 18).

Moore's assertions miss the mark. First, of course, he overlooks the Graham factors altogether. And Adams—a district court case[7] with very different facts—does not establish that smashing a car window is per se permissible under the Fourth Amendment; again, each case is to be judged on its facts, and the Eleventh Circuit has affirmed the denial of qualified immunity where law enforcement officers smashed a car window to remove a driver. See Johnson v. White, 725 F. App'x 868 (11th Cir. 2019). Further, in support of his claim of "de minimis" force, Moore cites several cases that are distinguishable on their facts.[8] And Moore's assertion of minimal injury is misguided because he overlooks the fact that Bezzaz suffered cuts and scars all over her upper body from the shattered glass. (See, e.g., Bezzaz Dep., Doc. 30-1, at 113 ("There were lacerations all over the side of my face, my neck, my back, my arms."); id. at 114

---

[7] Moore cites a magistrate judge's report and recommendation in Adams. That report and recommendation was later adopted by the district judge. See 2009 WL 4639681 (S.D. Ga. Dec. 7, 2009).

[8] Moore cites Nolin v. Isbell, 207 F.3d 1253 (11th Cir. 2000); Rodriguez v. Farrell, 280 F.3d 1341 (11th Cir. 2002); Woodruff v. City of Trussville, 434 F. App'x 852 (11th Cir. 2011); and Durruthy v. Pastor, 351 F.3d 1080 (11th Cir. 2003).

("[T]here's multiple scars on my body.  There's a scar on the left side of my upper lip.  There's scars going down my neck and the top of my back. . . . The largest scar is on my lip.").  The Court cannot conclude on this record that scars on the face and body of a 21-year-old woman amount to only "de minimis" injury.  And, of course, the danger of much more serious injury from a shattered window is and was obvious; for example, Bezzaz could have been blinded if glass had gotten into her eyes.  See Lee, 284 F.3d at 1200 ("[T]he fact that Lee did not suffer greater injury to her head as a result of it being slammed against the trunk of a car does not alone render the force used de minimis. . . . [O]bjectively unreasonable force does not become reasonable simply because the fortuity of the circumstances protected the plaintiff from suffering more severe physical harm.").

The Eleventh Circuit's Johnson decision—though unpublished—is persuasive and instructive.  There, the § 1983 plaintiff repeatedly refused to get out of his vehicle to answer questions after two young girls had observed him urinating in a parking lot and their parents called the sheriff's office.  After six officers arrived on the scene and the plaintiff continued to be noncompliant, a wrecker service was called and arrived almost an hour after the incident began.  The wrecker operator then tried to unlock the passenger door with several tools "but was thwarted by" the plaintiff.  725 F. App'x at 872.  An officer warned the plaintiff that he would break the window if the plaintiff did not open the door;

the plaintiff refused, and the officer broke the driver's window. The plaintiff claimed that the officers then grabbed his arms, "ripped" him out of the car, and "'flung' him to the ground." Id. "Along with cuts and bruises, Johnson sustained injuries to his left shoulder and both biceps requiring multiple medical visits," including two surgeries. Id. at 874.

In the course of affirming the district court's denial of qualified immunity to four of the six defendants at the summary judgment stage, the Johnson court noted that "under the three factors noted in Graham as well as this Court's own precedent, officers may not use substantial force to apprehend a nonthreatening suspect who has committed only a minor offense and is not resisting arrest." Id. at 876. The court concluded that "the jury must decide . . . whether defendants . . . used excessive force on a non-resisting suspect or used reasonable force given plaintiff's resistance to being arrested." Id. at 877.

Such is the case here as well. In Johnson, the officers attempted to negotiate with a driver who was much more resistant than Bezzaz for nearly an hour before breaking the car window. Moore, on the other hand, shattered Bezzaz's car window in less than a minute, and instead of negotiating he escalated the situation by barking commands at Bezzaz even though the situation was not urgent and Bezzaz was surrounded by at least eight deputies and numerous vehicles. See, e.g., Hartfelder v. New Jersey State Police, Civ. No. 16-5461, 2019 WL 3072252, at *6 (D.N.J. July 15, 2019) ("[T]he duration of

the traffic stop is perhaps the most striking factor in assessing Defendant Clark's reasonableness. . . . The roughly forty total seconds that elapsed in between Defendant Clark's first request and the baton swing is problematic, considering that Plaintiff did not pose any immediate threat to safety."). Especially considering the brevity of the encounter here and the fact that Bezzaz appears to have been trying to get out of the car as Moore shattered the window, qualified immunity does not shield Moore from the excessive force claim. See Stephens, 852 F.3d at 1324 n.27 ("Officers may consider a suspect's refusal to comply with instructions during a traffic stop in assessing whether physical force is needed to effectuate the suspect's compliance. However, *officers must assess not only the need for force, but also the relationship between the need and the amount of force used.* Taking the facts in the light most favorable to plaintiffs, a jury could reasonably find that the *degree* of force the officers used in this case was not justifiable under the circumstances." (emphasis in original) (quoting Deville v. Marcantel, 567 F.3d 156, 167–68 (5th Cir. 2009))). The issue of excessive force is for the jury's determination in this case, and Moore's motion for summary judgment must be denied on Count III.

### d.    Failure to Intervene (Count IV—Fuller)

In Count IV, Bezzaz claims that Fuller is liable in his own right because he failed to intervene in Moore's application of excessive force. Fuller seeks

20

summary judgment on this claim on the basis that he did not have time to intervene, but his motion must be denied.

"[A]n officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force[] can be held liable for his nonfeasance." Hadley v. Gutierrez, 526 F.3d 1324, 1330 (11th Cir. 2008) (first alteration in original) (quoting Velazquez v. City of Hialeah, 484 F.3d 1340, 1341 (11th Cir. 2007)); see also Byrd v. Clark, 783 F.2d 1002, 1007 (11th Cir. 1986) ("If a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence, the officer is directly liable under Section 1983."). For the non-intervening officer to be liable, he must have been "in a position to intervene yet failed to do so." Hadley, 526 F.3d at 1331.

Fuller contends in his motion that he "did not have a sufficient amount of time to cross back over to the driver's side to stop Deputy Moore from breaking the window," emphasizing that Moore "was able to break the driver's side window in two strikes, which took no more than a couple of seconds." (Doc. 30 at 20–21). But as the video shows, at almost the exact moment that Moore began striking the driver's side window of Bezzaz's car, Fuller began striking the passenger's side window with his own baton, though he did not succeed in breaking it. Thus, Fuller engaged in the same conduct as did Moore. This belies

his "not enough time" excuse, which the Court rejects out of hand.  Fuller's motion for summary judgment on Count IV therefore is denied.

> B.   State Law Claims

Bezzaz brings three claims  against Moore under Florida law:  false imprisonment (Count V), battery (Count VI), and intentional infliction of emotional distress (Count VII).  Moore seeks summary judgment on each of these claims, but his motion is due to be granted only on Count V.

> *1.    False Imprisonment (Count V)*

Bezzaz asserts in Count V that Moore falsely imprisoned her when he "unlawfully arrested [her] without probable cause." (Compl. ¶ 80).  But Moore correctly argues that because he had probable cause to arrest Bezzaz, her false imprisonment claim fails.

Under Florida law, "[f]alse imprisonment . . . is often 'distinguishable in terminology only from the action for false arrest'" and the two "are essentially the same tort when the issue involves an arrest and detention by a law enforcement officer." Willingham v. City of Orlando, 929 So. 2d 43, 49–50 (Fla. 5th DCA 2006) (quoting Johnson v. Weiner, 19 So. 2d 699, 700 (Fla. 1944)).  The elements of this tort are:  "1) the unlawful detention and deprivation of liberty of a person 2) against that person's will 3) without legal authority or color of authority and 4) which is unreasonable and unwarranted under the circumstances." Harder v. Edwards, 174 So. 3d 524, 530 (Fla. 4th DCA 2015)

(internal quotation marks omitted) (quoting <u>Montejo v. Martin Mem'l Med. Ctr., Inc.</u>, 935 So. 2d 1266, 1268 (Fla. 4th DCA 2006)).  "[P]robable cause is a complete bar to an action for false arrest and false imprisonment."  <u>Bolanos v. Metro. Dade Cnty.</u>, 677 So. 2d 1005, 1005 (Fla. 3d DCA 1996); <u>see also</u> <u>Wille v. Raymond</u>, 487 So. 2d 1211, 1213 (4th DCA 1986) ("As a matter of law there could not have been false imprisonment where there was probable cause for arrest.").

Earlier in this Order, the Court concluded that Defendants had arguable probable cause to arrest Bezzaz and that they therefore enjoy qualified immunity on the federal false arrest claims.  The Court now finds that Moore had not just arguable probable cause but actual probable cause to arrest Bezzaz for both a traffic violation and resisting without violence.

Although during the traffic stop Bezzaz did not understand what she had done wrong, at her deposition she acknowledged that she had committed a traffic violation.  (<u>See</u> Bezzaz Dep. at 86 ("Q. . . . Are you now aware that it's a violation of a traffic law for you to impede the roadway by coming to a stop and impeding the flow of traffic?  A.  Yes.").  Indeed, the video footage establishes this fact beyond dispute.  <u>See, e.g.</u>, § 316.183(5), Fla. Stat. (providing that "[n]o person shall drive a motor vehicle at such a slow speed as to impede or block the normal and reasonable movement of traffic").  And the video also supports actual probable cause to arrest for resisting without violence.  <u>See, e.g.</u>, <u>Billips v. State</u>, 777 So. 2d 1094, 1095 (Fla. 3d DCA 2001) (affirming conviction under

§ 843.02, Florida Statutes, and noting that "the officers were . . . legally justified in ordering [the defendant] to exit the vehicle in order to conduct a limited investigation, and her refusal to do so clearly obstructed their investigation"); Zivojinovich v. Barner, 525 F.3d 1059, 1072 (11th Cir. 2008) (finding that deputies had probable cause to arrest the § 1983 plaintiff for resisting without violence where the plaintiff "disobeyed a command by members of law enforcement to sit while they executed their lawful duties").

The existence of probable cause for Bezzaz's arrest defeats the false imprisonment claim in Count V. Moore's motion for summary judgment will therefore be granted on this claim.

### 2.   Battery (Count VI)

In Count VI, Bezzaz alleges that Moore committed battery by intentionally attacking her, shattering her car window, and throwing her up against a police car. (Compl. ¶ 90). This claim survives summary judgment.

"If excessive force is used in an arrest, the ordinarily protected use of force by a police officer is transformed into a battery." City of Miami v. Sanders, 672 So. 2d 46, 47 (Fla. 3d DCA 1996); accord Davis v. Williams, 451 F.3d 759, 768 (11th Cir. 2006); see also City of Homestead v. Suarez, 591 So. 2d 1125, 1126 (Fla. 3d DCA 1992) (finding that a jury question was presented on battery claim, noting that "even if the arrest was valid, this would not justify . . . excessive force . . . to effect the arrest"). "A battery claim for excessive force is analyzed

by focusing upon whether the amount of force used was reasonable under the circumstances." <u>Sanders</u>, 672 So. 2d at 47. As discussed earlier, a jury could conclude that the amount of force Moore used was not reasonable under the circumstances. Thus, Moore is not entitled to summary judgment on Bezzaz's state law battery claim either.

### 3. *Intentional Infliction of Emotional Distress (Count VII)*

In her seventh and final claim, Bezzaz asserts intentional infliction of emotional distress against Moore. The elements of this claim under Florida law are: "(1) the wrongdoer's conduct was intentional or reckless; (2) the conduct was outrageous; (3) the conduct caused emotional distress; and (4) the emotional distress was severe." <u>Williams v. Worldwide Flight Servs., Inc.</u>, 877 So. 2d 869, 870 (Fla. 3d DCA 2004). In arguing for summary judgment in his favor, Moore contends that his conduct was not outrageous and that Bezzaz did not suffer severe emotional distress. (<u>See</u> Doc. 31 at 23–24). However, the record presents triable issues on both of these points, and thus Moore is not entitled to summary judgment on this claim.

Under Florida law, to qualify as "outrageous" for purposes of this tort the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." <u>Metro. Life Ins. Co. v. McCarson</u>, 467 So. 2d 277, 278–79 (Fla. 1985) (quoting Restatement (Second) of Torts § 46

cmt. d (1965)). "Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" Id. at 279 (quoting Restatement (Second) of Torts § 46 cmt. d). Under the circumstances of this case, a jury could conclude that Moore's treatment of Bezzaz rises to this level. An average member of the community, upon being told the facts or viewing the video, might well feel resentment toward Moore and "exclaim, 'Outrageous!'"

And emotional distress is "severe" for purposes of this tort if it is "so severe that no reasonable man could be expected to endure it." Kim v. Jung Hyun Chang, 249 So. 3d 1300, 1305 (Fla. 2d DCA 2018) (quoting Restatement (Second) of Torts § 46 cmt. j (Am. Law Inst. 1965)). "[T]he intensity and the duration of the distress are factors to be considered in determining its severity." Id. (quoting Restatement (Second) of Torts § 46 cmt. j).

Moore argues that Bezzaz has not provided evidence "of distress that is substantial or enduring," (Doc. 31 at 24), emphasizing that she only saw a therapist twice and was not provided with any medication, (see id.). But in her deposition, Bezzaz testified that she has anxiety about speaking with people, leaving her house, driving herself anywhere, working, and being in a setting where law enforcement might be present. (Bezzaz Dep. at 14–15; see also id. at 120 ("I can no longer drive myself anywhere. I don't feel comfortable doing normal activities like grocery shopping in large areas of people. I don't feel

comfortable engaging with people in any type of setting, which kind of hinders anything outside of my home place."). She also testified that she no longer wants to work in the medical field because she does not "feel that [she] can care for people the way that [she] want[s] to due to [her] own trauma and [her] own anxiety and fear." (Id. at 20–21). Additionally, she described having a lot of panic attacks beginning immediately after the incident, during which she trembles, sweats excessively, and is "unable to speak properly." (Id. at 21). Bezzaz testified that she has panic attacks "[a]ny time [she] want[s] to do anything out of the comfort of [her] own home." (Id. at 22). She also stated that she has been suffering from depression since the incident, (id. at 30), and that she is not working because of the incident and the panic attacks, (id. at 33). And she attested that she has difficulty sleeping and her hair is falling out. (Id. at 125). Although Bezzaz will bear the burden at trial of persuading a jury that she has suffered severe emotional distress due to the June 3, 2020 incident, on this record the Court cannot conclude that she did not and does not suffer such distress.

In sum, because issues of fact remain regarding the outrageousness of Moore's conduct and the severity of Bezzaz's emotional distress, Moore's motion for summary judgment on Count VII must be denied.

## IV.   Conclusion

Accordingly, it is **ORDERED** as follows:

1.      Moore's Motion for Summary Judgment (Doc. 31) is **GRANTED in part and DENIED in part.** The motion is **granted** as to Counts I (false arrest) and V (false imprisonment) and is **denied** as to Counts III (excessive force), VI (battery), and VII (intentional infliction of emotional distress).

2.      Fuller's Motion for Summary Judgment (Doc. 30) is **GRANTED in part and DENIED in part.** The motion is **granted** as to Count II (false arrest) and is **denied** as to Count IV (failure to intervene).

**DONE** and **ORDERED** in Orlando, Florida, on September _16_, 2021.

_____
JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record